IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

INSTITUTE FOR WILDLIFE
PROTECTION,
               Plaintiff,

                                        CV-07-358-PK

                                        FINDINGS AND
v.                                     RECOMMENDATION

UNITED STATES FISH AND WILDLIFE
SERVICE and DIRK KEMPTHORNE,
               Defendants.

_____

PAPAK, Magistrate Judge:

      This action was filed in March 2007 by plaintiff Institute for Wildlife Protection (the

"Institute") against defendants United States Fish and Wildlife Service (the "Service") and

Secretary of the Interior Dirk Kempthorne (the "Secretary"), seeking declaratory and injunctive

relief only.  The Institute's complaint (#1) raises claims under the citizen-suit provisions of the

Endangered Species Act (the "ESA") and under the Administrative Procedures Act (the "APA"),

Page 1 - FINDINGS AND RECOMMENDATION

alleging defendants' failure to comply with non-discretionary duties under the ESA. This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1361.

Now before the court are defendants' motion to dismiss (#8) pursuant to Federal Civil Procedure Rules 12(b)(1) and (b)(6) and defendants' motion for protective order (#10). This court has considered the parties' motions, pleadings on file, and oral argument. For the reasons set forth below, the court recommends that defendants' motion to dismiss be granted in part and denied in part. Specifically, this court recommends that the Institute's first, second, and fourth claims be dismissed with prejudice, and that the motion to dismiss be denied as to the Institute's third claim. This court further recommends, however, that these proceedings be stayed as to the Institute's third claim. Finally, because these proceedings should be stayed to the extent the Institute's claims survive defendants' motion to dismiss, this court recommends that disposition of defendants' motion for protective order be likewise stayed.

## FACTUAL BACKGROUND

The Oregon chub (*Oregonichthys crameri*), a small freshwater cyprinid, is believed to be the only fish species endemic to Oregon. Prior to the 1950's, the Oregon chub was distributed throughout the lower elevation backwaters of the Willamette River drainage, but logging, dam construction, stream channelization, wetlands drainage, agricultural practices, and the introduction of non-native fish species, among other possible causes, have resulted in the disappearance of the species from over 98% of its original range. Only a handful of *O. crameri* populations currently exist, in small numbers and in genetic isolation from one another.

In April 1990, the Service received a petition prepared by scientists at Oregon State University to list the Oregon chub as an endangered species, and to designate as its critical

Page 2 - FINDINGS AND RECOMMENDATION

habitat all waters and tributaries of the Middle Fork of the Willamette River from the base of

Dexter Dam upstream to its confluence with the North Fork of the Middle Fork.  On October 18,

1993, the Service published a final rule listing *O. crameri* as an endangered species, but finding

that designation of critical habitat was not determinable at that time.  As will be discussed in

greater detail below, the "not determinable" finding permitted the Service to defer its statutory

obligation to designate critical habitat for the Oregon chub for not longer than one year, or until

October 18, 1994.  In its October 1993 announcement the service expressly committed itself to

doing so, stating that:

> Surveys were conducted during the summer of 1992 by the [Oregon Department
> of Fish and Wildlife] and [Oregon State University], specifically for obtaining
> information on Oregon chub distributions, or for general or research fisheries
> information on the Willamette River and its tributaries.  The Service is currently
> evaluating the results of these studies.  After a thorough analysis and review of
> this information, the Service will, to the maximum extent prudent, designate
> critical habitat for the Oregon chub.

58 Fed. Reg. 53800, 53802-53803.

The Service did not make the required designation within the specified time period, and

its failure to comply with its statutory obligation continues to the present.  Defendants concede

that since October 1994 they have been in continuous violation of their obligation under 16

U.S.C. § 1533(a)(3) and (b)(6)(C) to designate the Oregon chub's critical habitat.

Defendants similarly concede that the ESA requires the Secretary to conduct a review of

the status of the Oregon chub not less than every five years from the date it was first listed as

endangered, *see* 16 U.S.C. § 1533(c)(2), and that defendants failed to do so at any time between

October 1993 and the date the Institute placed them on sixty-day notice of their intent to file this

action.  On March 8, 2007, the day before this action was filed, the Service published a statement

Page 3 - FINDINGS AND RECOMMENDATION

purporting to initiate its first review of the Oregon chub's status.  *See* 72 Fed. Reg. 10547,

10548[1].

## LEGAL STANDARDS

### I.     Motion to Dismiss for Failure to State a Claim

Dismissal pursuant to Federal Civil Procedure Rule 12(b)(6) for failure to state a claim

should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts

in support of his claim which would entitle him to relief."  *Kahle v. Gonzales*, 474 F.3d 665, 667

(9th Cir. 2007), *citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  "In ruling on a 12(b)(6)

motion, a court may generally consider only allegations contained in the pleadings, exhibits

attached to the complaint, and matters properly subject to judicial notice."  *Swartz v. KPMG*

*LLP*, 476 F.3d 756, 763 (9th Cir. 2007).  In considering a 12(b)(6) motion to dismiss, a trial

court must accept all of the allegations in the complaint as true and construe them in the light

most favorable to the plaintiff.  *See Kahle*, 474 F.3d at 667.

### II.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

In considering a facial attack on subject-matter jurisdiction, in which a defendant

challenges the sufficiency of a pleading to establish jurisdiction in the federal courts, this court

accepts the allegations in the complaint as true and views them in the light most favorable to the

plaintiff.  *See*, *e.g.*, *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004); *Safe Air for Everyone*

*v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  A case is properly dismissed for lack of subject

matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the

---

[1]The Service's statement erroneously recites the status of the Oregon chub as "threatened"
rather than as "endangered."  *See* 58 Fed. Reg. 53800, 53801, 53804.

Page 4 - FINDINGS AND RECOMMENDATION

case. *See*, *e.g.*, *Home Builders Ass'n v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998);

*Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996).

## III.    Motion for Protective Order

District courts enjoy significant discretion to issue protective orders denying discovery.

*See*, *e,g,*, *B.R.S. Land Investors v. United States*, 596 F.2d 353, 356 (9th Cir. 1979).  However,

under Rule 26(c), it is the moving party's "heavy burden" to show good cause for the protective

order, substantiated by "specific examples or articulated reasoning":

> In general, the party seeking a protective order for discovery materials must
> demonstrate that "good cause" exists for the protection of that evidence.  "Good
> cause" is established where it is specifically demonstrated that disclosure will
> cause a specific prejudice or harm.  **Courts have held that the showing of "good
> cause" under Rule 26 is a heavy burden.  Broad allegations of harm,
> unsubstantiated by specific examples or articulated reasoning, do not satisfy
> the Rule 26(c)[] test.**

*Rivera v. NIBCO, Inc.*, 384 F.3d 822, 827 (9th Cir. 2004) (emphasis supplied; citations and some

internal quotation marks omitted).

## ANALYSIS

## I.    Motion to Dismiss

The Institute alleges (and defendants effectively concede) that defendants have violated

the Endangered Species Act by failing to designate critical habitat for the Oregon chub (in

violation of 16 U.S.C. § 1533(a)(3) and (b)(6)(C)) and by failing to conduct reviews of the

Oregon chub's status not less than once every five years since its listing date (in violation of 16

U.S.C. § 1533(c)(2)).  The Institute's first two claims address the former violation and its third

and fourth claims the latter.  Specifically, counts 1 and 2 of the Institute's complaint, brought

respectively under the Endangered Species Act and the Administrative Procedures Act, each

seek declaratory and injunctive relief requiring defendants to designate critical habitat for the Oregon chub, while counts 3 and 4, also brought respectively under the ESA and the APA, seek declaratory and injunctive relief requiring defendants to conduct a review of the Oregon chub's status.

Defendants now move to dismiss all four claims. Defendants argue (i) that this court lacks jurisdiction over either of the Institute's two APA claims, (ii) that the Institute's ESA and APA claims in connection with defendants' failure to designate critical habitat are time-barred under the applicable six-year statute of limitations, and (iii) that the Institute lacks standing to bring its ESA claim in connection with defendants' failure to conduct five-year status reviews or, in the alternative, that the claim is either prudentially moot or should be stayed.

For all of the reasons that follow, this court agrees that it lacks jurisdiction to hear the Institute's second and fourth claims, agrees that the Institute's first and second claims are time-barred, and disagrees with defendants' standing and mootness arguments in connection with the Institute's third claim. However, because defendants have announced the initiation of a status review for the Oregon chub, this court agrees with defendants' alternative argument that it is appropriate to stay further proceedings on the Institute's third claim pending resolution of the status review process.

### A.    Overview of the Endangered Species Act

The Endangered Species Act of 1973 was enacted by Congress expressly "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved," and "to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b). Pursuant to the ESA, the Secretary must

Page 6 - FINDINGS AND RECOMMENDATION

determine, "solely on the basis of the best scientific and commercial data available," 16 U.S.C. § 1533(b)(1)(A), whether a species is endangered (*i.e.*, "in danger of extinction throughout all or a significant portion of its range," 16 U.S.C. § (6)) or threatened (*i.e.*, "likely to become an endangered species within the foreseeable future," 16 U.S.C. § 1532(20)), thereby bringing such species within the protections of the ESA. *See* 16 U.S.C. § 1533(a).

Concurrently with listing a species as endangered or threatened, the Secretary must "to the maximum extent prudent and determinable" designate such species' "critical habitat" (*i.e.*, habitat requiring "special management considerations or protection" and containing "physical or biological features. . . essential to the conservation of the species," as well as areas outside the habitat protection of which may be "essential for the conservation of the species," 16 U.S.C. § 1532(5)). 16 U.S.C. § 1533(a)(3)(A). However, in the event that the Secretary deems the critical habitat "not then determinable," the Secretary may defer the duty to designate critical habitat by not more than one year from the listing date. 16 U.S.C. § 1533(b)(6)(C). "[N]ot later than the close of such additional year, the Secretary must publish a final regulation, based on such data as may be available at that time," designating the species' critical habitat. 16 U.S.C. § 1533(b)(6)(C)(ii).

In addition, not less than once every five years, the ESA requires the Secretary to conduct a status review of every species listed as endangered or threatened. *See* 16 U.S.C. § 1533(c)(2); *see also* 50 C.F.R. § 424.21 ("At least once every 5 years, the Secretary shall conduct a review of each listed species to determine whether it should be delisted or reclassified"). Service regulations require that notice be published in the Federal Register upon initiation of such a status review. *See* 50 C.F.R. § 424.21.

Page 7 - FINDINGS AND RECOMMENDATION

Although the ESA by its terms directs the Secretary to perform each of the foregoing obligations (*i.e.*, to determine whether a species should be listed as endangered or threatened, to designate endangered and threatened species' critical habitat, and to conduct five-year status reviews), defendants state in their briefing that the Secretary has delegated all three responsibilities to the Service.

Interested persons are authorized to petition the Secretary to revise a critical habitat designation, and the ESA mandates that "[t]o the maximum extent practicable, within 90 days after receiving the petition of an interested person . . . to revise a critical habitat designation, the Secretary shall make a finding as to whether the petition presents substantial scientific information indicating that the revision may be warranted." 16 U.S.C. § 1533(b)(3)(D)(i). Where such a petition is made to require the Secretary to designate critical habitat in the first instance, Service regulations provide that "[u]pon receiving a petition to designate critical habitat . . . the Secretary shall promptly conduct a review in accordance with the Administrative Procedure Act (5 U.S.C. 553) and applicable Departmental regulations and take appropriate action." 50 C.F.R. § 424.14(d).

The ESA further provides that any citizen has standing to bring an action to require defendants to comply with their non-discretionary ESA obligations under 16 U.S.C. § 1533, after providing sixty days' notice. *See* 16 U.S.C. § 1540(g).

B.      **Administrative Procedures Act Claims**

The Administrative Procedures Act, by its express terms, authorizes judicial review in the district courts over actions by government agencies "for which there is no other adequate remedy in a court." 5 U.S.C. § 704. That is, judicial review of agency action under the APA is

jurisdictionally unavailable where such action may be challenged through alternative procedural mechanisms. *See*, *e.g.*, *Oregon Natural Resources Council v. U.S. Forest Service*, 834 F.2d 842, 851-852 (9th Cir. 1987) (judicial review unavailable under the APA where the alleged violation was subject to challenge through the citizen-suit provisions of the Clean Water Act); *Bennett v. Spear*, 520 U.S. 154, 161-175 (1997) (judicial review of agency action in alleged violation of the ESA available under the APA *only* where the alleged ESA violation was of a provision other than 16 U.S.C. § 1533, for which the citizen-suit procedure set forth in 16 U.S.C. § 1540(g) is available); *Hawaii County Green Party v. Clinton*, 124 F. Supp. 2d 1173, 1193 (D. Haw. 2000) ("if there is a remedy under the ESA, then action under the APA is not allowable").

Here, as noted above, the Institute's second and fourth claims (brought under the APA) seek redress of the same violations of 16 U.S.C. § 1533 that underlie its first and third claims (brought under the ESA). The citizen-suit provisions of the ESA, codified at 16 U.S.C. § 1540(g), provide the exclusive remedy for violations of Section 1533. *See Bennett*, 520 U.S. at 172-173. Accordingly, this court lacks jurisdiction to consider the Institute's second and fourth claims, and on that basis recommends that those claims be dismissed with prejudice.

### C.    Failure to Designate Critical Habitat

The Institute's first claim is brought under the citizen-suit provision of 16 U.S.C. § 1540(g), and seeks declaratory and injunctive relief to remedy defendants' violation of 16 U.S.C. § 1533(a)(3)(A) and (b)(6)(C)[2]. Specifically, the Institute seeks a declaration that defendants

---

[2]The Institute's second claim, brought under the Administrative procedures Act, alleges the same violations and requests the same relief. Because this court has already recommended that the second claim be dismissed on jurisdictional grounds, the discussion that follows will refer solely to the Institute's first claim. Nevertheless, the legal principles discussed apply with equal force to the second claim.

Page 9 - FINDINGS AND RECOMMENDATION

have failed to perform nondiscretionary duties under the Endangered Species Act by failing to designate critical habitat for the Oregon chub, as well as an injunction compelling defendants to comply with those duties.

Defendants do not deny that their failure to designate critical habitat for the Oregon chub is in violation of the ESA, nor that they have been subject to an ongoing duty to make the required designation from October 1994 to the present. Instead, defendants argue that it is only the Institute's right to bring an action to compel defendants' compliance with their ongoing duty that is time-barred under 28 U.S.C. § 2401(a).

This is a matter of first impression in the Ninth Circuit. For all of the following reasons, this court agrees with defendants that the Institute's first claim is time-barred, and on that basis recommends that the first claim be dismissed.

The limitations period applicable to the Institute's claims is either six years or three years, depending on whether the Institute was under legal disability at the time defendants missed their nondiscretionary deadline:

> [E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues. The action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within three years after the disability ceases.

28 U.S.C. § 2401(a); *see also Wind River Mining Corp. v. United States*, 946 F.2d 710, 715 (9th Cir. 1991) (where a federal statute does not expressly provide for a statute of limitations, the applicable limitations period for suits against the federal government is Section 2401(a)). Under either limitations period, the outcome of the analysis is the same.

For purposes of Section 2401(a), a cause of action "first accrues" when the person challenging the action can institute and maintain a suit in court to pursue that action, *see Alsea*

Page 10 - FINDINGS AND RECOMMENDATION

*Valley Alliance v. Evans*, 161 F. Supp. 2d 1154, 1160 (D. Or. 2001), *citing Trafalgar Capital Assocs., Inc. v. Cuomo*, 159 F.3d 21, 34 (1st Cir. 1998).

This court must construe Section 2401(a) strictly in defendants' favor.  Pursuant to the doctrine of sovereign immunity, "the United States may not be sued without its consent."  *United States v. Mitchell*, 463 U.S. 206, 212 (U.S. 1983).  Section 1540(g), the Endangered Species Act provision granting "any person" standing to sue the Secretary and the Service in the federal district courts, operates as a waiver of defendants' sovereign immunity.  As such, it must be narrowly construed against persons seeking to sue the sovereign.  *See Tucson Airport Auth. v. General Dynamics Corp.*, 136 F.3d 641, 644 (9th Cir. 1998).  Similarly, the statute of limitations applicable to actions brought under Section 1540(g) must likewise be construed strictly in favor of governmental defendants.  *See*, *e.g.*, *Tosello v. United States*, 210 F.3d 1125, 1127 (9th Cir. 2000); *Badaracco v. Commissioner*, 464 U.S. 386, 398 (1984).

This doctrine of strict construal means that waiver of immunity must not be "enlarged beyond what the language requires."  *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 686 (1983).  "[N]either, however, should [the courts] assume the authority to narrow the waiver that Congress intended."  *United States v. Idaho*, 508 U.S. 1, 7 (1993), *citing Smith v. United States*, 507 U.S. 197, 203 (1993); *see also United States v. Trident Seafoods Corp.*, 92 F.3d 855, 864 (9th Cir. 1996).  The principle of strict construal informs the analysis that follows.

The plain language of Section 1533 requires defendants to designate the Oregon chub's critical habitat by a date certain:  "not later than" one year following the species' listing date, here October 18, 1993.  16 U.S.C. § 1533(b)(6)(C)(ii).  Defendants' failure to make the required designation by October 18, 1994, was in clear violation of Section 1533; pursuant to 16 U.S.C. §

1540(g)(2), as of that date "any person" was therefore free to notify defendants of his or her

intent to sue. 16 U.S.C. § 1540(g). As of December 17, 1994, the close of the sixty-day

notification period provided in Section 1540(g)(2)), any person in compliance with the notice

requirements of Section 1540(g) could have instituted and maintained a suit against defendants

in connection with their failure to designate critical habitat for *O. crameri*, and it is therefore on

that date that the six-year limitations period provided in Section 2401(a) began to run as to most

potential plaintiffs. *See* 28 U.S.C. § 2401(a); *see also Alsea Valley*, 161 F. Supp. 2d at 1160.

Effective December 18, 2000, therefore, the right of action that accrued December 17, 1994,

became time-barred.

        The conclusion that most potential plaintiffs are time-barred from suing to correct

defendants' ongoing violation of Section 1533 is supported by the Eleventh Circuit's decision in

*Ctr. for Biological Diversity v. Hamilton*, 453 F.3d 1331 (11th Cir. 2006). The *Hamilton* court

was presented with facts remarkably similar to those at issue here, and affirmed the holding of

the district court below that, pursuant to Section 2401(a), an action to compel the Secretary or

the Service to designate a species' critical habitat becomes time-barred six years following the

deadline specified for such action in Section 1533(b)(6)(C). *See Hamilton*, 453 F.3d at

1334-1336; *but cf. Southern Appalachian Biodiversity Proj. v. United States Fish & Wildlife

Serv.*, 181 F. Supp. 2d 883, 887 (D. Tenn. 2001) ("The Service's non-action logically can only be

construed as a continuing violation of 16 U.S.C. § 1533(b)(6)(C). The statute of limitations

commences to run anew each and every day that the Service does not fulfill the affirmative duly

required of it"); *Schoeffler v. Kempthorne*, 2007 U.S. Dist. LEXIS 46386, *48 (D. La. 2007)

(unpublished disposition) (each day's failure to comply with the mandatory deadline set forth in

Page 12 - FINDINGS AND RECOMMENDATION

Section 1533(b)(6)(C) constitutes "independent actionable conduct," a cause of action for which accrues anew every day until the nonfeasance ceases).  Specifically, the *Hamilton* court found that "the [ESA] counsels in favor of a single violation that accrues on the day following the deadline [to make a critical habitat designation,]" reasoning that "[t]he language 'not later than' [of Section 1533(b)(6)(C)] creates not an ongoing duty but a fixed point in time at which the violation for the failure of the Secretary to act arises."  *Id.* at 1335.  The court found support for this interpretation in the requirement that the Secretary make the designation "based on such data as may be available at that time" rather than on later-acquired information.  *Id.*; *see also* 16 U.S.C. § 1533(b)(6)(C).

As noted above, by the express terms of Section 2401(a), the right of action of "any person under legal disability or beyond the seas at the time the claim accrues" is subject to a different limitations period, specifically a three-year period beginning from the date the disability ceases or the person returns to this country.  28 U.S.C. § 2401(a).  The Institute was not in existence in December 1994, the date the limitations period began to run as to most potential plaintiffs, but rather "was established as a 501(c)(3) organization in 2002."  Complaint. ¶ 8.  Assuming without deciding that nonexistence could constitute a "disability" for purposes of Section 2401, the Institute's right of action became time-barred not later than December 31, 2005, well before the date this action was filed.

Defendants' motion to dismiss the Institute's first claim presents a nuanced question of law, requiring delicate analysis as to which this court has already noted that different courts have reached differing results.  Compare *Hamilton*, *supra*, with *Southern Appalachian*, *supra*, and *Schoeffler*, *supra*.  This court acknowledges that support exists for a conclusion contrary to that

Page 13 - FINDINGS AND RECOMMENDATION

reached herein.  It is arguable, for example, that defendant's failure to act could properly be characterized as *ultra vires*, and thus survive dismissal on statute of limitations grounds under the Ninth Circuit's decision in *Wind River Mining Corp. v. United States*, 946 F.2d 710 (9th Cir. 1991).  The *Wind River* court held that where "a challenger contests the substance of an agency decision as exceeding constitutional or statutory authority, the challenger may do so later than six years following the decision by filing a complaint for review of the adverse application of the decision to the particular challenger."  *Wind River*, 946 F.2d at 715.  Here, the Institute challenges defendants' statutory authority to refrain from taking nondiscretionary action; moreover, the Institute alleges what could arguably be construed as a recent adverse application of the failure to take the statutorily mandated action, asserting that in 2003 the Service authorized continuation of sewage plant operations that were "adversely affecting and indeed limiting" the Oregon chub habitat in which the Institute has alleged a significant scientific and aesthetic interest.   Complaint, ¶ 44 (internal quotation marks and modifications omitted); *see also* Complaint, ¶¶ 10, 12.  However, in the absence of guidance from the Ninth Circuit as to the applicability of *Wind River* to whether a failure to act can be construed as *ultra vires*, this court declines so to analyze the Institute's first claim[3].

Similarly, this court acknowledges the weight of case law supporting the Institute's arguments that its claim is not time-barred because defendants' violation is continuing or, in the alternative, because a new cause of action "first accrues" each day that defendants' nonfeasance

---

[3]This court's determination that it will not apply *Wind River* to the Institute's current challenge would not prevent the Institute from seeking to avail itself of the *Wind River* doctrine in the event the Institute petitioned defendants under 16 U.S.C. § 1533(b)(3)(D)(i) and 50 C.F.R. § 424.14(d) to designate critical habitat for the Oregon chub, and defendants failed promptly to do so.

Page 14 - FINDINGS AND RECOMMENDATION

continues. *See*, *e.g.*, *Wilderness Soc'y v. Norton*, 434 F.3d 584, 589 (D.C. Cir. 2006) (concluding

in dicta that Section 2401(a) would not time-bar actions to rectify government agency inaction in

violation of a nondiscretionary duty because such suits "do[] not complain about what the agency

has done but rather about what the agency has yet to do"); *S. Utah Wilderness Alliance v.*

*Norton*, 301 F.3d 1217, 1232 (10th Cir. 2002) (suggesting in dicta that an agency's failure to take

a required action "should be considered an ongoing failure to act, resulting in an ever-green

cause of action for failure to act"); *Nat'l Parks Conservation Ass'n v. TVA*, 480 F.3d 410, 417

(6th Cir. 2007) (finding a cause of action time-barred in connection with failure to take

mandatory action only with regard to damages for inaction taking place more than five years'

prior to the date the action was filed, and timely with respect to each day's failure to comply with

the statutory duty during the limitations period); *Schoeffler*, 2007 U.S. Dist. LEXIS 46386 at *48

(unpublished disposition) (each day's failure to comply with a mandatory statutory deadline

constitutes "independent actionable conduct," a cause of action for which accrues anew every

day until the nonfeasance ceases); *Save the Valley, Inc. v. United States EPA*, 223 F. Supp. 2d

997, 1001 n.1 (D. Ind. 2002) (concluding in dicta that "a failure to act cannot logically ever

trigger a statute of limitations"); *Southern Appalachian*, 181 F. Supp. 2d at 887 ("The statute of

limitations commences to run anew each and every day that the Service does not fulfill the

affirmative duly required of it"); *American Canoe Ass'n v. United States EPA*, 30 F.Supp.2d 908,

925 (D. Va. 1998) (government agency failure to perform a nondiscretionary action "is better

understood as a continuing violation, which plaintiffs may challenge at any time provided the

delay continues;" characterizing "application of a statute of limitations to a claim of

unreasonable delay [a]s grossly inappropriate"); *Natural Resources Defense Council v. Fox*, 909

Page 15 - FINDINGS AND RECOMMENDATION

F. Supp. 153, 159-160 (D.N.Y. 1995) ("a citizen suit to enforce a failure . . . to perform a

non-discretionary duty . . . is not subject to any statute of limitations").  However, in light of the

plain language of Section 2401(a), the date certain for performance of the duty set forth in

Section 1533(b)(6)(C), and this court's duty to construe waiver of sovereign immunity strictly in

favor of the government, in the absence of clear guidance from the Ninth Circuit this court

declines to adopt the reasoning of these cases.  *See Cherosky v. Henderson*, 330 F.3d 1243, 1248

(9th Cir. 2003) ("the application of the continuing violations doctrine should be the exception,

rather than the rule").  According to the plain statutory language, the Institute's first claim

became time-barred six years following the date it first accrued.

     For all of the foregoing reasons, this court recommends that the Institute's first claim be

dismissed, with prejudice, as barred by the applicable statute of limitations[4].

### D.    Failure to Conduct Five-Year Status Reviews

     The Institute's third claim is likewise brought under the citizen-suit provision of 16

U.S.C. § 1540(g), and seeks declaratory and injunctive relief to remedy defendants' violation of

16 U.S.C. § 1533(c)(2).  As noted above, although 16 U.S.C. § 1533(c)(2) requires defendants to

conduct a review of the status of the Oregon chub not less than once every five years, in the

fourteen years since the species was listed as endangered defendants have never completed such

a review.  However, following defendants' receipt of the Institute's sixty-day notice of intent to

---

    [4]This court notes that its decision is necessarily without *res judicata* effect on other
plaintiffs seeking to bring similar citizen-suits against these defendants.  This court's conclusion
that the Institute's claim is time-barred will not bar action by any person (even if such person is a
member of the Institute at the time this decision issues) with a scientific, aesthetic, or spiritual
interest in the Oregon chub and its habitat who has, for example, reached age eighteen (and has
thus ceased to be disabled by infancy for competency purposes) within the past three years.  *See*
28 U.S.C. § 2401(a).

file this action, defendants initiated such a review on March 8, 2007.

Defendants now move to dismiss the Institute's third claim, arguing that the Institute lacks standing and, in the alternative, that the claim is prudentially moot. For the reasons that follow, this court disagrees with defendants' arguments, and recommends finding that the Institute properly enjoys standing to bring its third claim and that the claim should not be dismissed on mootness grounds. However, because the Service has initiated a process which, if carried through to its conclusion, would render the Institute's claim moot, for the following reasons this court recommends that further proceedings on the Institute's third claim be stayed pending either completion or unreasonable delay in completing the recently initiated status review.

### 1.    Standing

To satisfy the standing requirements of Article III of the United States Constitution, a plaintiff must show:

> (1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000) (citation omitted). "[O]rganizations. . . must satisfy three additional prerequisites to sue on behalf of their members: (1) their members must otherwise have had standing to sue on their own behalf; (2) the interests at stake must be germane to the organizations' purposes; and (3) neither the claim asserted nor the relief requested must require the participation of individual members in the lawsuit." *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1171 (9th Cir. 2002), *citing United Food And Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544,

Page 17 - FINDINGS AND RECOMMENDATION

553 (1996).

In its complaint, the Institute alleges that it is a nonprofit "scientific and conservation organization," whose "central purpose . . . is to protect wildlife."  Complaint, ¶ 8.  The Institute further alleges that its members and staff frequent the current and former habitat of the Oregon chub, and that their scientific and aesthetic interest in that habitat is adversely affected by defendants' prolonged failure to comply with their statutory duties.  *See* Complaint, ¶¶ 10, 12.  In connection with defendants' failure to conduct five-year reviews, the Institute alleges that defendants' nonfeasance has directly injured its scientific and aesthetic interest in *O. crameri* by depriving its members of information concerning "the condition and conservation status of the species."  Complaint, ¶¶ 11, 57, 60.  The Institute explains that its organization has limited scientific and personnel resources to allocate among numerous projects, and that the lack of current status information adversely impacts its ability to commit its resources effectively and efficiently, thus impairing its ability to accomplish its central purpose.

The Institute's scientific and aesthetic interest in the Oregon chub is clearly a cognizable interest for purposes of standing.  *See  Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1172 (9th Cir. 2002) (allegation that "members. . . derive scientific, aesthetic, and spiritual benefits from [a species'] continued existence in its natural habitat" constitutes a "desire to use, observe, and study the stated . . . species [that] is undeniably a cognizable interest for purposes of standing"), *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562-63, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992).  Moreover, the Institute has alleged an injury directly traceable to defendants' violation of the law that is neither conjectural nor hypothetical:  the Institute is hampered in its ability to accomplish its goals by the absence of information resulting from

Page 18 - FINDINGS AND RECOMMENDATION

defendants' inaction.  In addition, an order requiring defendants to comply with Section 1533(c)(2) would likely redress the Institute's injury, in that any verified change in the Oregon chub's status – including change that would result in downlisting or delisting the species – would permit the Institute to allocate its organizational resources more effectively.  Finally, there is no question as to the Institute's organizational standing under *Brown* and *Badgley*, in that the Institute's members would have standing to sue in their own right, their individual participation in this action is not required, and the Institute's cognizable interest is clearly germane to its purpose of protecting wildlife.

Because all of the elements of Article III standing have been properly pled, this court recommends that defendants' motion to dismiss the Institute's third claim for lack of standing be denied.

### 2.    Prudential Mootness

Defendants argue, in the alternative, that the Institute's third claim should be dismissed as prudentially moot.  "Prudential mootness addresses 'not the power to grant relief but the court's discretion in the exercise of that power.'"  *S. Utah Wilderness Alliance v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997) ("*SUWA*"), *citing Chamber of Commerce v. United States Dep't of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980).  The central inquiry of prudential mootness is whether circumstances have "changed since the beginning of litigation that forestall any occasion for meaningful relief."  *Id.*; *see also Chamber of Commerce*, 627 F.2d at 291 (dismissal as prudentially moot is appropriate where a controversy is "so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant").  The Ninth Circuit has not adopted the

Page 19 - FINDINGS AND RECOMMENDATION

prudential mootness doctrine.

Assuming without deciding that the Ninth Circuit would recognize the doctrine of prudential mootness, its application would be inappropriate here.  In *SUWA*, the Tenth Circuit found a request for injunctive relief to compel Bureau of Land Management consultation with the Service prudentially moot where such consultation had already been completed.  *See SUWA*, 110 F.3d 724, 727-729.  Similarly, in *Voyageurs Nat'l Park Ass'n v. Norton*, 381 F.3d 759 (8th Cir. 2004), the Eighth Circuit found a claim seeking injunctive relief to compel formal consultation prudentially moot only after such formal consultation was complete.  *See Voyageurs*, 381 F.3d at 765.  Here, by contrast, defendants' belated five-year review has been initiated but is not complete; were the Institute's claim to be dismissed at this stage, nothing would prevent defendants from reverting to their former nonfeasance, and either shelving or inadequately completing the initiated review.

Because defendants have not established that this court will be unable to grant the relief the Institute seeks, the court recommends that the motion to dismiss the Institute's third claim as prudentially moot be denied.

### 3.    Stay

As a third alternative, defendants request that further proceedings in connection with the Institute's third claim be stayed pending completion of the review process initiated in March of this year.  The power of the district courts to stay proceedings before them is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. North American Co.*, 299 U.S. 248, 254 (1936).  Here, defendants have initiated the review process, and if the review is

completed in a compliant manner and without unreasonable delay, the Institute's third claim for relief will become moot.  Stay of further proceedings would therefore promote judicial economy and efficiency by eliminating the risk of moot proceedings while leaving open an avenue for redress of the Institute's injury, should defendants fail once again to follow through on their express commitment to comply with a statutory obligation.

For the foregoing reasons, this court recommends that further proceedings in connection with the Institute's third claim be stayed, either until defendants have completed their review of the status of the Oregon chub and taken appropriate action thereon or, in the alternative, until the Institute has come forward with evidence of defendants' unreasonable delay in completing a compliant review.

## II.    Motion for Protective Order

Defendants move to stay discovery pending the outcome of their motion to dismiss and/or to restrict discovery to the administrative record in the event discovery is permitted to go forward.  Defendants note, correctly, that judicial review of agency action is generally limited to the administrative record, *see Friends of Earth v. Hintz*, 800 F.2d 822, 828-829 (9th Cir. 1986), *citing Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-744 (1985), and argue that no exceptions to that general rule are applicable here.  The Institute argues that review outside the administrative record may be necessary here to explain agency inaction, and further argues, correctly, that although *review* may generally be limited to the administrative record, *discovery* often is not so limited, in particular where, as here, it is not clear that defendants have designated an administrative record or on what basis they will do so, *see Thompson v. United States Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989); *Public Power Council v. Johnson*, 674 F.2d 791,

Page 21 - FINDINGS AND RECOMMENDATION

793-795 (9th Cir. 1982); *see also*, *e.g.*, *Natural Resources Defense Council, Inc. v. Train*, 519 F.2d 287, 292 (D.C. Cir. 1975); *United States v. Bell Petroleum Services, Inc.*, 718 F. Supp. 588, 591, 591 n. 3 (D. Tex. 1989) (*rev'd on other grounds*).

Because this court has recommended that further proceedings on the sole claim remaining in this action be stayed, this court need not resolve defendants' motion for protective order at this time.  It would be inappropriate to permit the parties to expend resources exchanging and reviewing documents at a time when all proceedings are stayed pending an outcome that could render the remaining claim moot.  This court therefore recommends that defendants' motion for protective order likewise be stayed until such time as either the stay of proceedings as to the Institute's third claim is lifted or this action is dismissed in its entirety.

## CONCLUSION

For the reasons set forth above, this court recommends that defendants' motion to dismiss (#8) be granted with prejudice as to the Institute's first, second, and fourth claims, and denied as to the Institute's third claim, that further proceedings in connection with the Institute's third claim be stayed either until defendants have completed their review of the status of the Oregon chub and taken appropriate action thereon or, in the alternative, until the Institute has come forward with evidence of defendants' unreasonable delay in completing a compliant review, and that further proceedings on defendants' motion for protective order (#10) be included in the stay of the Institute's third claim.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due August 8, 2007.  If no objections are filed, review

Page 22 - FINDINGS AND RECOMMENDATION

of the Findings and Recommendation will go under advisement on that date. If objections are

filed, a response to the objections is due fourteen days after the date the objections are filed and

the review of the Findings and Recommendation will go under advisement on that date.


Dated this 25th day of July, 2007.


 /s/ Paul Papak _____
Honorable Paul Papak
United States Magistrate Judge