**Don Webb**, OSB # 97429                                                      Hon. Paul Papak
Email: iwplit@Comcast.net
Institute for Wildlife Protection
2630 Elinor St.
Eugene, OR  97403
Tel:  (541) 434-6630
Fax:  (541) 434-6702
Attorney for Plaintiff Institute for Wildlife Protection

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| INSTITUTE FOR WILDLIFE PROTECTION,<br><br>                    Plaintiff,<br>     v.<br><br>UNITED STATES FISH AND WILDLIFE SERVICE; and DIRK KEMPTHORNE,<br><br>                    Defendants. | Case No. CV-07-0358-PK<br><br>PLAINTIFF INSTITUTE'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STAY OR LIMIT DISCOVERY AND TO LIMT THE COURT'S REVIEW TO AN ADMINISTRATIVE RECORD |

### I.  Introduction

On May 14, 2007, Defendants filed a motion to limit all review to the administrative record and to request a blanket protective order eliminating discovery on them.[1]  Dkt. #10. Defendants have still not filed an administrative record, nor have they provided any responses to discovery requests given to them over 9 months ago, except to object to each one.  Yet they request again that this Court limit its review to the what they say will be an administrative record when it is finally filed.  Defendants' motions are still premature and are still not well taken.  To avoid any additional duplicative filings beyond those generated by Defendants, the Institute will limit its responses herein, and respectfully directs the Court's attention to previous filings, including Dkt

---

[1] Defendants are less shy regarding the Institute, having served it on Jan. 18th with discovery putatively relating to standing, even though some requests impugn Constitutional Freedom of Association rights under NAACP v. Alabama, 357 U.S. 449 (1958).

PLAINTIFF'S OPPOSITION TO  DEFENDANTS' MOTION RE DISCOVERY AND THE RECORD                           Page 1

#13 (Opposition to Defendants' first request to limit the case to the administrative record).

Defendants' brief is highly conclusory in nature, and Defendants are completely incorrect in their claims that review is limited to the record, that they are the sole arbiters of what the record consists of, or that supplementation of the record is highly exceptional.[2] Decisionmakers may neglect important information, or rely on inappropriate issues. National Audubon Soc. v. USFS, 46 F.3d 1437, 1447-48 as amended (9th Cir. 1994) Any such material will form part of the real record if it was even "indirectly" before a decisionmaker. Thompson v. US Dept. of Labor, 885 F.2d 551, 555 (9th Cir. 1989).

## II.  It is Premature to Limit Discovery

Discovery should not be limited at this point because Defendants have *never* substantively responded to Plaintiff's 1st and 3rd Discovery Requests.[3] These requests are carefully limited[4] and seek to determine whether political considerations affected any decisions to delay critical habitat designation and to find out what the actual administrative record really is. Defendants have a long and sordid history of violating the Endangered Species Act for improper, political purposes (see Webb Decl, ¶¶ 19-20, Dkt # 12) and the Rollie White memorandum suggests that such bad faith and bad acts may well be involved here too (id., Exh. 1). Improper influence in ESA decisions prompted Congress to request an investigation into the matter by the U.S. Department of the Interior's Office of the Inspector General (attached). That report was

---

[2] There is no controlling law holding that Courts may not venture beyond the administrative record, as Defendants insist. Instead, although the record is the "focal point" of review, Camp v. Pitts, 411 U.S. 138, 142 (1973), the presence of a focal point does not mean that one must not examine other materials. And courts often do look beyond the record. In fact, commentators have noted that the doctrine that review is limited to the record "no longer exists in any coherent form." S. Stark and S. Wald, SETTING NO RECORDS: THE FAILED ATTEMPT TO LIMIT THE RECORD IN REVIEW OF ADMINISTRATIVE ACTION, 36 Admin. Law Rev. 333, 335 (1984).

[3] Responses to request #3 are not yet due. Past performance does not suggest optimism however.

[4] The discovery is sharply limited to certain dates, as Defendants admit. D's Mtn. at 3, n. 1.

issued in March of this year and found a "brazen case of political meddling" (id. at 12) that involved "intimidati[on] and bullying" …"to minimize the Endangered Species Act as much as possible or to ensnare it in court litigation" and to prevent "designat[ion of] critical habitats (id. at 4-5).

If such bad faith or bad acts are shown by the discovery information, then it may well affect the time a court, sitting in equity, sets for a deadline for critical habitat designation. Thus, the information is relevant to the relief requested. Federal courts are empowered with great flexibility to craft equitable remedies. When a court addresses an issue of public interest, as with an environmental law, those powers are at their peak. As the Ninth Circuit recently observed,

> '[w]here the public interest is involved, 'equitable powers assume an even broader and more flexible character than when only a private controversy is at stake.'" United States v. Alisal Water Corp., 431 F.3d 643, 654 (9th Cir. 2005) (quoting Porter v. Warner Holding Co., 328 U.S. 395, 398 (1946)). Unless Congress provides otherwise, "'[c]ourts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved.'" United States v. Coca-Cola Bottling Co. of L.A., 575 F.2d 222, 228 (9th Cir.1978) (quoting United States v. First Nat'l City Bank, 379 U.S. 378, 383 (1965)).

Northwest Environmental Defense Center v. BPA, 477 F.3d 668, 680 (9th Cir. 2007).

Defendants seek to evade discovery on the basis that administrative law cases are sometimes limited to the contents of the administrative record. The foremost problem with this argument is that Plaintiffs are not seeking to supplement the record, but instead seek to discover what the real record *is*. Defendants misconstrue Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402 (1971). D's Memo. at 4. Overton Park does not constrain judicial review "solely" to the administrative record. Instead, the Court clearly states that "judicial review based solely on litigation affidavits was [not] adequate." Id. at 409 (the affidavits were *post hoc* rationalizations by the agency). And, the Court reiterated that judicial review is to be based on the "whole

record," (Id. at 419) thus supporting Plaintiff here, who seeks to discover what the whole record actually is.

When a party challenges an agency, it is *per se* necessary for that party to have access to the entire universe of documents from which the agency selected the administrative record. Courts have rejected the notion that plaintiffs may not access such materials through discovery. United States v. Bell Petroleum, 718 F.Supp. 588, 591, n. 3 (WD Tx. 1989) rev'd in part, on other gnds., 3 F.3d 889 (5th Cir. 1993) ("an informed inquiry into [agency] actions, requires opportunity to investigate what evidence went into the record."). In another case, the agency objected to an attempt to add documents from the agency's files to the record. Even though the underlying statute (CERCLA, the Comprehensive Environmental Response, Compensation, and Liability Act) strictly limited review to the administrative record (42 U.S.C. 9613(j)(1))[5], the Court nonetheless allowed discovery. In this case, neither the Administrative Procedure Act (APA), 5 U.S.C. § 500-et seq., nor the Endangered Species Act (ESA), 16 U.S.C. § 1531 – et seq., restricts review to the administrative record. There is "substantial legal authority in favor of allowing discovery" in failure to act cases. Sierra Club v. DOT, 245 F.Supp.2d 1109 (D Nev. 2003) (failure to prepare SEIS under NEPA). See NRDC v. Train, 519 F.2d 287, 292 (DC Cir. 1975) ("plaintiffs are entitled to an opportunity to determine, by limited discovery, whether any other documents which are properly part of the administrative record have been withheld"); Tenneco Oil Co. v. DOE, 475 F.Supp. 299, 318 (D Del. 1979) (plaintiff "entitled to discovery of all materials relevant" to agency's interpretation of its regulations at issue and to materials directly or indirectly considered by decisionmakers) and several others between the Institute and

---

[5] This also illustrates that Congress well knows how to limit review to the record and does so when it chooses. That is has not done so here indicates that the courts should be wary of imposing their own limitations, and legislating where Congress did not.

these Defendants (including C03-1251, CO4-594, C03-5006 in the WD Wash.). There is nothing whatsoever exceptional about allowing discovery in a case such as this one. It is controlling law that "judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." United States v. Reynolds, 345 U.S. 1, 9-10 (1953); In re Midwest Milk Monopolization Litigation, Alexander v. National Farmers Organization, 60 F.R.D. 12, 15 (W.D. Missouri 1973) (same). "Absent a compelling reason for nondisclosure, the United States is bound by the Federal Rules of Civil Procedure just as any other litigant." NAACP, Western Region v. Holdgson, 57 F.R.D. 81, 82 (D.D.C. 1972), citing United States v. Proctor & Gamble Co., 356 U.S. 677 (1958). "[T]he paramount interests of the government in having justice done between litigants in the Federal courts militates in favor of requiring great effort on its part to produce any documents relevant to a fair determination of this litigation." Freeman v. Seligson, 405 F.2d 1326, 1337-1338 (DC Cir. 1968).

Defendants incorrectly claim that a response to the FOIA request mean no discovery should be allowed. But, FOIA is not a substitute for discovery. In re Steele, 799 F.2d 461, 466 (9th Cir. 1986); Renegotiation Bd. v. Bannercraft Clothing, 415 U.S. 1, 24 (1974) (FOIA is not a "tool for discovery"). The mere fact that a FOIA request was filled cannot be used to escape the requirement that discovery be allowed, because "FOIA was not intended to supplement or displace rules of discovery." John Doe Agency v. John Doe Corp., 493 U.S. 146, 153 (1989). The FOIA response only covers documents, terminated over a year ago, and numerous errors were made in the documents provided. See Plaintiff's Memo., Dkt # 13 at 4-5. The time limit on production limits any significant duplication with the FOIA request, which contains few documents with recent file date stamps.

A court may allow discovery without determining whether the discovered materials may

ultimately be allowed as extra-record evidence. Public Power Council, 674 F.2d at 794-95. In that case, the agency had already produced an administrative record. Here, none has been produced at all, and Defendants' motion is nothing if not premature. It is thus by no means uncommon to allow discovery in matters such as this, the Federal Rules specifically encourage it, no common law doctrines prohibit it, and common sense favors it.

One must wonder why Defendants have fought so hard to eliminate all discovery. What are they trying to hide with so much effort? Why did they not simply deny that any documents existed relating to an improper purpose? Why did they take the position that a decision was made in this failure to act case? (Plaintiff has prosecuted numerous such cases against these same Defendants, and this is the first one in which they have adopted the position that a decision was already made.) Defendants' litigation positions themselves suggest bad acts and bad faith.[6]

### III. It is Premature to Limit Review to the Administrative Record

Defendants have still not filed an administrative record, yet seek to limit this Court's review to what they claim will constitute the record. It is error for a district court to proceed with review without a complete record. NRDC v. Train, 519 F.2d 287, 292 (DC Cir. 1975) (remanded, and plaintiffs entitled to discovery to determine whether other documents were withheld). The D.C. Circuit reversed because the document threw "light on the factors and considerations relied on by" the decisionmaker. Id. These are exactly the type of documents that the Institute seeks to discover in this case.

Defendants' also claim that a remand "for further consideration" should be given if the "agency decision is not sustainable on the basis of the administrative record…." D's Memo. at

---

[6] Indeed, bad faith has arguably already occurred. A federal agency or any of its officials who seek to avoid the effects of their own, wholly inexcusable, noncompliance with their mandatory duties effectively expose their hands to be not wholly clean. See, Stop H-3 v. Coleman, 533 F.2d 434, 444 (9th Cir. 1976)(rehearing and rehearing en banc denied).

4,5. But, this is not a case where a decision to take some action was made, and additional facts, analysis or law should be used to make a new decision. This is a failure to act case, involving a long-unmet deadline. No "remand" can or should be given.

Defendants claimed "appropriate course of action" (D's Memo. at 6) is self-serving and unjust. They wish for Plaintiffs to review the record (presumably sometime in late February) and then seek supplementation of the record. Of course, without discovery one could never know whether the record is complete or not. And, without seeing the entire record, there is no way to determine if the record produced by the agency is complete and accurate. Of course, if it is not, then one would not be supplementing the record at all – one would be helping to create the true record. Supplementation refers to the use of information outside the record, not the creation of a correct record.

### IV. The Contents of the Record Must Ultimately Be Decided by the Court

Plaintiff here has not attempted to supplement the administrative record. Instead, the Institute only seeks to determine what the record truly consists of. This is a completely different question from whether a complete record may have material added to it (supplementation).

The administrative record is not necessarily what the agency says it is. Instead, independent criteria apply. When agencies compile the record, they may exclude items that do not support their final decisions (such as a decision to not designate critical habitat or to not conduct status reviews), or documents may be omitted by accident.

Having the whole record before it is crucial to the Court's review. An incomplete record must be viewed as a "fictional account of the actual decision-making process." Portland Audubon Society v. Endangered Species Committee, 984 F.2d 1534, 1548 (9th Cir. 1993). Importantly, "the administrative record consists of those materials in the agency record at the time the decision was made," not merely those documents actually used by the decision-maker.

<u>Haynes v. United States</u>, 891 F.2d 235, 238 (9th Cir. 1989) (emphasis in original).  Naturally, it will be impossible to determine if the record is complete without discovery.  The true administrative record "is not necessarily those documents that the agency has compiled and submitted as 'the' administrative record."  <u>Thompson v. US Dept. of Labor</u>, 885 F.2d 551, 555 (9th Cir. 1989) (quotation omitted).  "The whole administrative record, therefore, consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's decision."  <u>Id</u>.  "[T]he court must look to all the evidence that was before the decision-making body."  <u>Public Power Council v. Johnson</u>, 674 F.2d 791, 794 (9th Cir. 1982) (quotation omitted).

It is *per se* necessary for a challenging party to have access to the entire universe of documents from which the agency selected the administrative record.  Courts have rejected the notion that plaintiffs may not access such materials through discovery.  The "discovery process is meant to give litigants an opportunity to leave no stone unturned, and [thus] they must be allowed to uncover evidence which may or may not be admissible…."  <u>United States v. Bell Petroleum</u>, 718 F.Supp. 588, 591, n. 3 (WD Tx. 1989) <u>rev'd in part, on other gnds.</u>, 3 F.3d 889 (5th Cir. 1993).  In <u>Bell</u>, the court allowed discovery even though the underlying statute strictly limited review to the administrative record.  Here, no statute restricts review to the administrative record.  Other courts have allowed discovery: <u>See</u> <u>American Petroleum Institute v. Knecht</u>, 456 F.Supp. 889, 910 (CD Cal. 1978) <u>aff'd</u> 609 F.2d 1306 (9th Cir. 1979) (plaintiff may add agency documents to record); <u>NRDC v. Train</u>, 519 F.2d 287, 292 (DC Cir. 1975) ("plaintiffs are entitled to an opportunity to determine, by limited discovery, whether any other documents which are properly part of the administrative record have been withheld"); <u>Tenneco Oil Co. v. DOE</u>, 475 F.Supp. 299, 318 (D Del. 1979) (plaintiff "entitled

to discovery of all materials relevant" to agency's interpretation of its regulations at issue and to materials directly or indirectly considered by decisionmakers).

## V. What Decision Has the Agency Made?

Defendants have never stated what decision they made in this failure to act case – nor when they made it.  Perhaps Defendants made a decision to delay critical habitat designation. Or, Defendants may also have made a decision to never determine critical habitat – i.e. they may have decided to promote other actions above this one as they did in CBD v. Norton, 254 F.3d 833 (9th Cir. 2001).  There, FWS promoted its own group of species for consideration for listing over that of species that were petitioned by citizens and those species "languished" for years in an "administrative quagmire." Id. at 839-40.  The Ninth Circuit ruled that such treatment was illegal, and that FWS could not promote its own nominees over petitioned species.  If FWS made such decisions here, then the Court, the public and the plaintiff have a right to discover that.

## VI. An Equity Court Can Always Consider Materials Outside the Record

Supplementation of the record is appropriate when considering an injunction.  Courts can, and should, consider extra-record evidence to determine whether harms are immediate or irreparable, and to determine the probability that such harm will in fact occur.  Moreover, equity courts should consider any adverse impacts on the public interest when considering injunctive relief.  Don't Ruin Our Park v. Stone, 749 F.Supp. 1388, 1392 (MD Pa. 1990).

## VII. Conclusion

Respectfully, this Court should allow Plaintiffs to pursue their statutory right to discovery, and reserve for later its decision as to whether documents discovered are, in fact, part of the record.  In the event that some are not, the Court may then decide whether they ought to be admitted and considered, thereby supplementing the record.

Defendants must address particular and specific requests and show "that specific

prejudice or harm will result…" if no protective order is granted.  LR 26.6; <u>Blankenship v. Hearst Corp.</u>, 519 F.2d 418, 429 (9th Cir. 1975).  They have not even attempted to do so.  D's Memo. at 8.[7]  Instead, each request is a valid use of discovery.  Plaintiff's Interrogatories go directly to bad faith by Defendants to delay action.  They are fundamental to an injunction and of course permitted by Fed. R. Civ. P. 26.  All three of the Requests for Production relate to the bad faith and bad acts issues above, and seek to determine what the true administrative record really is.  This Court is quite capable of determining if discovered information is part of the record, or if it can be used to supplement an already complete record.  No harm can possibly ensue from this carefully delimited discovery.

To the extent that Defendants request that the Court completely limit its own review to a supposed administrative record that is not even available to the Court (or to plaintiff) yet, that notion must be rejected.  If the Court chooses to allow Defendants a third attempt to limit review, they can do so based upon specific documents when – and if – Plaintiff seeks to introduce them as part of the record, or as a supplement to that record via one of the numerous exceptions to record limitation.

                                              Respectfully Submitted,

                                              <u>s/ Don Webb,    January 23, 2008</u>
                                              **Don Webb, OSB # 97429; 541-434-6630**
                                              Attorney for Plaintiff Institute for Wildlife Protection

---

[7] Defendants can hardly claim the request is overly burdensome.  Both Defendants are federal agencies, and the economic and efficient management of their records is required.  44 U.S.C. § 3102.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

**CERTIFICATE OF SERVICE**

I hereby certify that this day, I electronically filed the following:

1. Plaintiffs' Opposition to Defendants' Motion

with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

lawson.fite@usdoj.gov

Mr. Lawson E. Fite
Environment and Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7369
Washington, D.C. 20044-7369
202-305-0217
202-305-0275

and I hereby certify that I have mailed by United States Postal Service the document to the

following non CM/ECF participants: [none].

Dated  January 23, 2008            s/  Don Webb
                                   DON WEBB, Oregon Bar No. 97429
                                   Institute for Wildlife Protection
                                   2630 Elinor St.
                                   Eugene, OR  97403
                                   541-434-6630; 541-434-6702 (fax)
                                   Email: iwplit@comcast.net